UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EDWARD HARRISON,                                :
                                                :
                      Plaintiff,            :           07 Civ. 1806 (HB)
                                                :
        -against-                         :           OPINION & ORDER
                                                :
GLENN GOORD, WILLIAM MAZZUCA,                   :
ROLAND LARKIN, CARLTON GOOD,                    :
ARLAN PELC, JAMES BUONATO,                      :
CHARLES HOBBS, DALE LARSEN,                     :
SGT. RAMA, RICHARD WOODWARD,                    :
NICHOLAS VOLHOS, KENNETH CONKLIN,               :
RENE HERNANDEZ, FRANK WOODWARD,                 :
and ENRIQUE TORRES,                             :
                                                :
                      Defendants.           :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

        Plaintiff Edward Harrison ("Harrison" or "Plaintiff") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Glenn Goord, William Mazzuca, Roland Larkin, Carlton Good, Arlan Pelc, James Buonato, Charles Hobbs, Dale Larsen, Sgt. Rama, Richard Woodward, Nicholas Volhos, Kenneth Conklin, Rene Hernandez, Frank Woodward, and Enrique Torres,[1] claiming that he was subject to cruel and unusual punishment due to the conditions of his confinement, harassment, retaliation and mail tampering in violation of his rights under the First, Eighth and Fourteenth Amendments. On January 21, 2009, Defendants[2] moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the grounds that (1) Harrison failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) Harrison's allegations are incredible as a matter of law; (3) Harrison's allegations fail to state a cause of action for a constitutional violation; (4)

---

[1] Defendant Goord is the Commissioner of the New York State Department of Corrections Services ("DOCS"); Defendant Mazzuca is the Superintendent of the Fishkill Correctional Facility; Defendant Larkin is the Deputy of Programs at Fishkill Correctional Facility; Defendant Pelc is the Acting Deputy Superintendent at the Fishkill Correctional Facility; Defendant Good is a Supervising Corrections Counselor for DOCS; Defendant Buonato is a Lieutenant at Fishkill Correctional Facility; Defendant Hobbs is a Lieutenant at Fishkill Correctional Facility; Defendant Larsen is a Corrections Sergeant at Fishkill Correctional Facility; Defendant Rama is an Inmate Grievance Committee Sergeant at Fishkill Correctional Facility; Defendant Richard Woodward is a Sergeant at Fishkill Correctional Facility; and Defendants Volhos, Conklin, Hernandez, Frank Woodward and Torres are Corrections Officers at Fishkill Correctional Facility.

[2] Defendants Goord, Mazzuca, Rama and Frank Woodward were never served with process; therefore they are not parties to this case or to the instant motion for summary judgment. *See* Fed. R. Civ. P. 4(m).

1

Defendants are entitled to qualified immunity; (5) Defendants lacked personal involvement; and (6) Harrison has failed to establish deliberate indifference.  Plaintiff opposed Defendants' motion.  For the reasons set forth below, Defendants' motion for summary judgment is granted.

## I.  FACTUAL BACKGROUND[3]

Harrison has been incarcerated in the DOCS system since 2002.  *See* Deposition of Edward Harrison ("Harrison Dep.") at 5:21-25.  He was transferred from Five Points Correctional Facility Special Housing Unit ("Five Points") to Fishkill Special Housing Unit ("Fishkill") in July 2004.  Complaint ("Compl.") ¶ 38.  Before his transfer, Harrison had filed several grievances regarding misbehavior reports he had been issued at Five Points relating to an alleged work stoppage, which is unrelated to the allegations of this case.  *See* Harrison Dep. at 100:5-101:6.  Shortly after arriving at Fishkill, in July 2004, Harrison was visited by a Mr. Davidow of the Inspector General's Office, who interviewed Harrison regarding his grievances related to the events that had occurred at Five Points.  *See* Compl. ¶ 40.  Directly after the interview with Inspector Davidow, as he was being escorted from the interview room to his housing unit, Defendants Conklin and Volhos warned Harrison that he should not have been contacting the Inspector General's office.  *Id.* ¶ 41.  Plaintiff alleges that beginning with this incident in July 2004, Defendants began a pattern of harassment and confrontation in retaliation for Harrison's complaints of events that occurred in correctional facilities.

Plaintiff does not allege that he encountered any other threats or harassment relating to this incident until over two months later, on September 25, 2004, when Defendant Volhos came to his cell to make it "verbally clear that Plaintiff could and would get physically hurt or injurred [*sic*]."  *Id.* ¶ 42.[4]  As a result of this confrontation, Harrison filed a formal complaint against Defendant Volhos.  *Id.* ¶ 43.  Several days later, after escorting him back to his cell after a dentist's appointment, Defendant Conklin failed to remove Harrison's shackles for upwards of 45 minutes.  Harrison Dep. at 16:2-6.  Plaintiff filed a formal complaint against Defendant Conklin as a result of this incident.  Compl. ¶ 45.  Several days later, Defendant Conklin approached Harrison in his cell block and called Harrison a "rat;" thereupon, Plaintiff filed another complaint against

---

[3] This account of the facts is taken from the Complaint, Defendants' Statement Pursuant to Local Rule 56.1, with accompanying affidavits and exhibits and Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl. Aff.") and accompanying exhibits.  Although Plaintiff did not submit a response to Defendants Rule 56.1 Statement, he did submit a detailed affidavit and exhibits.  The Court has examined carefully Plaintiff's memorandum of law and proffered evidence in considering the instant motion.  As required on a motion for summary judgment, the facts of this case are relayed in the light most favorable to Plaintiff.

[4] Harrison does not allege that Volhos, or any other Defendant, ever physically harmed him; his allegations are limited to threats of physical harm.

Defendant Conklin. *Id.* ¶ 46-47.  Several days later, Defendants Larson and Frank Woodward visited Harrison's cell to investigate a complaint, where Woodward verbally abused Harrison, using curse words and a racial slur, and told Harrison to stop filing grievances. *Id.* ¶ 48. Defendant Larson, who was Defendant Frank Woodward's supervisor, merely stood by and did nothing. *Id.*  Plaintiff filed yet another formal complaint based on this incident. *Id.* ¶ 49.

Approximately one month later, Plaintiff was issued a number of misbehavior reports, including for possession of contraband, destruction of property, and failure to obey a direct order. *See id.* ¶¶ 50-52; Pl. Aff. Exh. 2, 3, 6.  Plaintiff alleges that these misbehavior reports were issued in retaliation for having spoken with the Inspector General in July and for filing complaints against the various corrections officers at Fishkill.  *See* Compl. ¶¶ 51-54.  Plaintiff alleges that he appealed these "tickets" but never received any reply.  *Id.* ¶¶ 58-59.  As a consequence of having been "written up," Harrison was moved from his cell on the second floor to a different cell on the first floor.  *See id.* ¶ 60.  While escorting Harrison to the new cell, Defendant Hernandez told Harrison he was lucky he didn't fall and hurt himself on the walk down the stairs; Harrison interpreted this statement as a threat.  *See id.* ¶ 61.  Upon arriving in the cell, Harrison noticed a small amount of water that had collected on the floor, but did not complain about it.  *See* Harrison Dep. at 97:22-98:7.  As it turned out, the shower in the cell "did not have the proper equipment" and every time Harrison took a shower, the shower drain would back-up and approximately an inch and a half of water would collect on the cell floor.  Compl. ¶¶ 64-67; Harrison Dep. at 98:17-24.  The cell was designated for handicapped inmates, and the flooding was apparently caused by the fact that the shower, which could accommodate a wheelchair, had a low "lip" and allowed water to spill over from the shower area into the cell.  Harrison Dep. at 19:21-20:5; Declaration of Dale Larsen ("Larsen Decl.") ¶ 6.  Because the door to the recreation pen ("rec pen") attached to the cell let in a draft, the water on the floor would become "freezing cold" and the collected water was "dirty" and "filthy."  Compl. ¶ 68.  Harrison alleges he informed numerous officers of the problem with the shower, but his complaints and requests for cleaning supplies were ignored.  *Id.* ¶ 69.  He further alleges that Sergeant Woodward was aware of the flooding situation, but did nothing to remedy it.  *Id.* ¶¶ 71-72.  Harrison and his cellmate both filed grievances concerning the shower conditions.  *Id.* ¶ 75.  Harrison also personally told Defendant Goode about the situation, and Goode told Harrison "he would look into the problem," but Harrison was never told what was being done to correct the problem.  *Id.* ¶¶ 77-78.  Unrelated to the shower conditions, on October 31, 2004, Plaintiff wrote a grievance complaining that he was being deprived of communication

with his family, that his legal mail was being interfered with, that he was denied certain personal items and that he had been placed in mechanical restraints without due process. *Id.* ¶ 79-80.

On December 17, 2004, when Defendant Conklin was escorting Harrison's cellmate out of the cell, per standard procedure, he asked Harrison to step outside into the rec pen area. *See* Harrison Dep. at 64:13-23; Compl. ¶ 82; Declaration of Kenneth Conklin ("Conklin Decl.") ¶ 7. At the time, Harrison was dressed only in his undergarments. *See* Harrison Dep. at 64:5-6. As the door to the rec pen was closing, Defendant Conklin ordered Harrison to get dressed in his winter clothing, but he did not. *Id.* at 65:4-10. Plaintiff alleges that Conklin left him locked out in the rec pen in his underwear for an excessive period of time. Compl. ¶ 82. As a result of this incident, Defendant Conklin issued Plaintiff a misbehavior report for failure to obey a direct order. Pl. Aff. Exh. 14. Plaintiff filed a formal complaint relating to this incident. *See* Declaration of Arlan Pelc ("Pelc Decl.") ¶ 6, Ex. A. Plaintiff received a response from Defendant Pelc regarding this incident, to which he replied on December 31, 2004. *See* Compl. ¶ 90. Thereafter, Plaintiff embarked on a prolific letter-writing campaign, writing approximately 100 letters from December 2004 to February 2005, both internal and external, to various individuals and organizations such as Commissioner Goord, the Inspector General's office, the Bureau of Prisons, the Legal Aid Society and the American Civil Liberties Union. *See id.* ¶¶ 86, 88-96, 98-99, 101-111. Plaintiff does not specify the contents of these letters or the grievances to which they may have related.

Plaintiff does not dispute that he never appealed any of the formal grievances he did file that relate to the incidents that give rise to this lawsuit. Plaintiff alleges that, notwithstanding his many complaints and grievances, he received no responses to the majority of his correspondence. Because he never heard back, Plaintiff alleges the Defendants must have been tampering with his mail and causing it to be destroyed or deflected from its intended destination. However, Plaintiff testified at his deposition that he observed his grievances and letters being deposited into the locked box designated for outgoing mail, that he doesn't know who has the keys to the mailbox, and that his only basis for the contention that his mail was tampered with is that he never received responses to his grievances and letters. *See* Harrison Dep. at 84:13-91:7; *see also id.* at 73:2-11.

## II.  LEGAL STANDARD

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In showing the existence of a genuine issue of material fact, "the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Golden Pac. Bancorp v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (finding party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Rather, he "must come forward with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in [the] rule, . . . the adverse party's response . . . must set forth *specific facts* showing that there is a genuine issue for trial.") (emphasis added). The facts must be presented in a form that would be admissible at trial. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Even if the parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999); *see also Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005). Still, "proceeding *pro se* does not otherwise relieve [a party] from the usual requirements of summary judgment." *Price v. Engert*, 589 F. Supp. 2d 240, 244 (W.D.N.Y. 2008) (internal quotation marks and citation omitted). As is well-established by both the Supreme Court and the Second Circuit, even *pro se* litigants must comply with the relevant law and procedures. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by [*pro se*] prisoners be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citation omitted).

### III.  DISCUSSION

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA].  Among other reforms, the PLRA . . . requires prisoners to exhaust prison grievance procedures before filing suit."  *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citations omitted).  "The Supreme Court has held that 'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  The exhaustion provision of the PLRA states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Jones*, 549 U.S. at 204.  As the Supreme Court has held, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Id.* at 211 (citation omitted).  Moreover, the Supreme Court has held that the PLRA requires "proper exhaustion" of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 101 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.*; *see also Davis v. State of New York*, No. 07-3262-pr, 2009 U.S. App. LEXIS 3439, at *3 (2d Cir. Feb. 20, 2009).  Thus, for example, "filing an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.  *See Woodford*, 548 U.S. at 83-84.  Moreover, "[i]n the wake of *Woodford*, an inmate can no longer claim that partial exhaustion of administrative remedies is sufficient because prison officials have notice of his claim."  *Petrucelli v. Hasty*, 05-cv-2002 (DLI) (LB), 2009 U.S. Dist. LEXIS 24889, at *17 (E.D.N.Y. Mar. 25, 2009) (citing *Macias*, 495 F.3d at 43 (overruling *Braham v. Clancy*, 424 F.3d 177, 183 (2d Cir. 2005)).  As the Second Circuit has noted, this "proper exhaustion" requirement is necessary because the "benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."  *Macias*, 495 F.3d at 41.  Prisoners are required to exhaust their administrative remedies "even if they believe that administrative remedies would be ineffective or

futile." *Johnson v. Killian*, No. 07 Civ. 6641 (LTS) (DFE), 2009 U.S. Dist. LEXIS 34670, at *8 (S.D.N.Y. Apr. 21, 2009) (citation omitted); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

As the Supreme Court has noted, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Thus, all that the PLRA requires is compliance with the prison's grievance procedures. *Id.* In this case, Defendants' undisputed evidence indicates that DOCS maintains a three-tiered grievance procedure, as set forth in the New York Code, Rules and Regulations ("N.Y.C.R.R."). 7 N.Y.C.R.R. § 701.5. Full exhaustion of administrative remedies in the New York system requires compliance with all three steps of the grievance procedure. *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) ("Complete exhaustion of the . . . administrative remedies through the highest level for each claim is required."). First, the inmate must file a complaint within twenty-one calendar days of the incident about which he is complaining. 7 N.Y.C.R.R. § 701.5(a); Declaration of Karen R. Bellamy ("Bellamy Decl.") ¶ 3. Upon receiving the complaint, the Inmate Grievance Resolution Committee ("IRGC"), which is made up of inmates and prison officials, has sixteen calendar days to resolve the matter informally, or if that is unsuccessful, to hold a hearing. 7 N.Y.C.R.R. § 701.5(b). After a hearing, the IGRC has two working days to reach a decision. *Id.* at § 701.5(b)(3). The second step in the process, after an adverse decision on an initial grievance, the grievant may file an appeal with the superintendent of the facility within seven calendar days of the superintendent's determination. 7 N.Y.C.R.R. § 701.5(c), 701.8(h); Bellamy Decl. ¶ 6. Third, if the inmate is not satisfied with the superintendent's response, he may then appeal to the Central Office Review Committee ("CORC"). 7 N.Y.C.R.R. 701.5(d). Where an inmate alleges harassment on the part of prison personnel, the procedure provides for an expedited grievance process wherein the first step is skipped and the complaint is made directly to the official's supervisor in the first instance. 7 N.Y.C.R.R. § 701.8; Bellamy Decl. ¶ 4-5. However, even when this alternative procedure is prescribed, "the final step in the grievance procedure always remains the appeal to CORC." *Gardner v. Daddezio*, 07 Civ. 7201 (SAS), 2008 U.S. Dist. LEXIS 92715, at *9 (S.D.N.Y. Nov. 5, 2008) (citing 7 N.Y.C.R.R. § 701.8(h)).

In this case, it is undisputed that Harrison failed to exhaust administrative procedures as to any of his sixteen causes of action. While the record shows that Harrison filed at least one formal I.R.G.C. complaint relating to incidents giving rise to this lawsuit, *see* Pelc Decl., Ex. A, he never

appealed any of these grievances to the CORC.  *See* Bellamy Decl. ¶ 10, Exh. A.[5]  Each of his claims in this lawsuit is grievable under the expedited procedure for filing of harassment complaints, described above.  *Id.* ¶ 9.  However, Harrison argues that his failure to exhaust should be excused under the Second Circuit's line of cases, beginning with *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), that recognized certain exceptions to the exhaustion requirement.  Specifically, Harrison argues that "although prison officials provided grievance forms, they unlawfully confiscated Plaintiff's mail and threatened him, thereby essential[ly] barring Plaintiff from exhausting his administrative remedies."  Plaintiff's Memorandum of Law ("Pl. Mem.") at 8.

Under the *Hemphill* line of cases, a court must make a three-step inquiry before it dismisses a prisoner's complaint for failure to exhaust his remedies.  First, a court should consider whether administrative remedies were unavailable.  *Hemphill*, 380 F.3d at 686; *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) ("A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available.") (alterations and citations omitted).  The test for assessing the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available."  *Hemphill*, 380 F.3d at 686.  Second, a court should inquire into whether the defendant's actions, by threat or otherwise, inhibited the inmate's exhaustion of remedies, so as to estop the defendant from raising the plaintiff's failure to exhaust as a defense.  *Hemphill*, 380 F.3d at 686; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (finding exhaustion is not jurisdictional, but that it is an affirmative defense that is subject to estoppel).  Finally, a court should consider whether there are "special circumstances" that plausibly justify the prisoner's failure to comply with administrative procedure, such as a reasonable misinterpretation of the requirements of the prison system's regulations.  *Hemphill*, 380 F.3d at 686, 689.  The existence of such special circumstances "must be determined by looking at circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."  *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).[6]

---

[5] Plaintiff clearly was familiar with the procedures for appealing complaints, however, as is evidenced by the fact that he successfully appealed two claims unrelated to this lawsuit, arising out of incidents at Five Points prior to his transfer to Fishkill.  *See id.*

[6] There is some doubt among courts of this Circuit as to whether the three-part inquiry under *Hemphill* has survived the Supreme Court's holding in *Woodward*.  *See, e.g.*, *Toomer v. County of Nassau*, No 07-CV-01495 (JFB)(ETB), 2009 U.S. Dist. LEXIS 38160, at *25 n.8 (E.D.N.Y. May 5, 2009) (collecting cases).  The Second Circuit analyzed the PLRA's exhaustion requirement in light of *Woodward* in *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), but did not hold explicitly whether the *Hemphill* analysis remains the rule of this Circuit.  However, the Second Circuit has, in recent cases, applied the *Hemphill* analysis.  *See, e.g.*, *Vogelfang v. Riverhead County Jail Officers*, 07-1268-cv, 2009 U.S. App. LEXIS 1914 (2d Cir. Feb. 2, 2009) (finding it was error for district court not to consider plaintiff's

In this case, Harrison argues that he "tried to exhaust administrative remedies" but was unable to do so because he was threatened and because his mail was tampered with. *See* Pl. Mem. at 6-8. It is unclear whether, by making this argument, Harrison contends that administrative avenues were not available to him, under the first prong of the *Hemphill* analysis, or whether he contends that Defendants hampered his ability to exhaust and are thus estopped from raising the failure to exhaust as a defense, under the second *Hemphill* prong. *See* 380 F.3d at 686. With respect to whether administrative remedies were available, the Second Circuit has held that "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* at 688. Moreover, Plaintiff admits that he was provided with grievance forms by prison officials, Pl. Mem. at 8, and that he filed numerous complaints, both formally and informally. Indeed, Plaintiff testified that he personally observed his formal complaints being deposited into a locked box designated for IRGC complaints. Additionally, viewed in the light most favorable to Plaintiff, the record reflects that he continued to file grievance after grievance during the same period of time when he was allegedly being threatened and harassed and his mail was allegedly being tampered with. The last threat that Harrison alleges any of the Defendants made to him was in October 2004, when Defendant Hernandez commented that Harrison was lucky he didn't fall and hurt himself on the stairs while being escorted to his new cell. However, almost immediately upon arriving at the new cell, Harrison began grieving the condition of the shower. He continued to file grievances throughout the winter of 2004 up through his transfer from Fishkill in February 2005. Accordingly, it is apparent that a reasonable person of ordinary firmness in Harrison's position, as well as Harrison himself, would not have thought that administrative remedies were unavailable, and Harrison has not satisfied the first prong of the *Hemphill* analysis. *See, e.g.*, *Winston v. Woodward*, No. 2:05 Civ. 3385 (RJS), 2008 U.S. Dist. LEXIS 43208, at *21-23 (S.D.N.Y. May 30, 2008) (finding that plaintiff's attempts to file grievances and appeals "cuts against his contention that administrative remedies were functionally unavailable to him"); *Amador v. Superintendents of Dep't of Corr. Servs.*, No. 03 Civ. 0650 (KTD), 2007 U.S. Dist. LEXIS 89648, at *28 (S.D.N.Y. Dec. 4, 2007) (rejecting plaintiffs claims that administrative remedies were made unavailable by prison officials' threats against them

---

arguments that failure to exhaust should be excused under *Hemphill*). Nonetheless, because I find, as detailed below, that Harrison does not satisfy his burden to show he is excused from exhaustion under the *Hemphill* analysis, I need not address this somewhat thorny open question.

because the fact that plaintiffs were able to file formal grievances "directly [cut] against" their argument that remedies were unavailable).

Plaintiff also appears to argue that because his mail was tampered with, Defendants should be estopped from raising his failure to exhaust his remedies as a defense. However, Plaintiff has presented no evidence from which a reasonable jury could conclude that the Defendants were engaged in mail tampering. It is true that Plaintiff has alleged that he sent numerous complaints and grievances, and that he never received a response; he also notes that M.P. Stone, an officer on the IRGC, informed him that the Committee never received any of his grievances and advised him that he could resubmit them, which he did. However, as Plaintiff acknowledged at his deposition, his only reason for believing that his mail was actually being tampered with was that he never received any responses to his many grievances and letters. He has no proof that his mail was ever opened or tampered with, and if it was, that it was the Defendants who engaged in such misconduct. Cutting even further against his contentions is the fact that he personally observed his mail being deposited into a locked box, and that he does not know who has the key to open that mail box. Since Harrison cannot present any evidence that the Defendants even had access to his mail, there is certainly insufficient evidence that they tampered with it. *See Petrucelli*, 2009 U.S. Dist. LEXIS 24889 at *25-27 (finding plaintiff failed to fully exhaust administrative remedies because, although he suggested that prison officials had either inadvertently or intentionally failed to mail his appeal, he had provided no evidence to support this claim); *Winston v. Woodward*, 2008 U.S. Dist. LEXIS 43208 at *24, 26 (finding that because plaintiff failed to produce any direct or circumstantial evidence to substantiate plaintiff's claims of mail tampering, he failed to satisfy PLRA's exhaustion requirement); *see also Rauso v. Vaughn*, No. 96-6977, 2000 U.S. Dist. LEXIS 9035, at * (E.D.Pa. 2000) (dismissing mail tampering claim because "[a]t a minimum, Plaintiff had to create a record" connecting defendant's knowledge of grievances against him to mail tampering, and "there [was] no evidence that defendant . . . ever tampered with Plaintiff's mail"). Moreover, there is direct evidence, provided by Harrison himself, that indicates that during the same timeframe when Harrison alleges his mail was being destroyed, his mail was indeed reaching its intended destination. *See, e.g.*, Pl. Aff. Ex. 16 (12/18/04 letter to "I.R.G.C." stamped "Received" by Inmate Grievance Program 12/20/04); Pl. Aff. Ex. 22 (1/6/05 letter acknowledging receipt of Harrison's complaint dated 12/25/04). Thus, although there may be some "metaphysical doubt" as to whether someone somewhere tampered with Harrison's mail, *see Matsushita*, 475 U.S. at 586-87, there is no evidence that any such misconduct occurred so that

10

Harrison may survive dismissal of his claims based on his estoppel argument.[7] Plaintiff did not argue that any special circumstances excuse his failure to exhaust administrative remedies, and the Court can conceive of none based on the record before it.

It should be noted that although the undisputed evidence shows that Harrison did verbally convey his grievances to several of the Defendants, and that he sent numerous letters to various individuals and organizations relating to his complaints, including to the Superintendent of Fishkill and the Commissioner of DOCS, these efforts, for better or worse, just don't cut the mustard so as to satisfy the strict exhaustion requirement. *See Collins v. Goord*, 438 F. Supp. 2d 399, 413 (S.D.N.Y. 2006) ("Although Collins wrote letters and completed forms in repeated efforts to obtain photocopies, these letters and forms are not sufficient absent facts excusing Collins' use of the IGP process."); *Lee v. Carson*, 310 F. Supp. 2d 532, 537 (W.D.N.Y. 2004) (holding that prisoner could not exhaust by verbally conveying grievance to two prison guards); *Colon v. Farrell*, No. 01 Civ. 6480 (FE), 2004 WL 1126659, at *5 (W.D.N.Y. Sept. 23, 2004) (noting that "letters of complaints to DOCS employees and officials do not satisfy the grievance procedure exhaustion requirement"); *Conner v. Hurley*, No. 00 Civ. 8354 (LTS) (AJP), 2004 WL 885828, at *2 (S.D.N.Y. Apr. 26, 2004) (explaining that letters to facility superintendent and DOCS commissioner "may not be deemed substitutes for strict compliance with the requirements of the IGP"). In addition, even assuming that Harrison filed the initial complaints that he claims to have filed, and never received a response, this does not excuse the failure to exhaust his remedies. *See* 7 N.Y.C.R.R. § 701.8; *Donahue v. Bennett*, 02-CV-6430 CJS (B), 2004 U.S. Dist. LEXIS 17189, at *20 (W.D.N.Y. Aug. 17, 2004) ("Plaintiff is incorrect when he argues that the failure of prison officials to respond to a grievance eliminates further obligations on plaintiff's part."); *Lashley v. Artuz*, No. 01-Civ.-11542 (SAS), 2004 U.S. Dist. LEXIS 9707, at *5-6 (S.D.N.Y. May 27, 2004) (noting that "[e]ven where an inmate receives no response to his initial level grievance, he is still required to file an appeal in order to satisfy the exhaustion requirement"); *Arce v. Keane*,

---

[7] There is authority, including in recent district court cases in this Circuit, for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide. *See Pavey v. Conley*, 544 F.3d 739, 740-42 (7th Cir. 2008) (*en banc*) (Posner, J.); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir.) (in motion to dismiss for failure to exhaust administrative remedies under PLRA, court may "decide disputed issues of fact"), *cert. denied*, 540 U.S. 810 (2003); *Sease v. Phillips*, 06 Civ. 3663 (PKC), 2008 U.S. Dist. LEXIS 60994, at *9 n.2 (S.D.N.Y. July 25, 2008); *Amador*, 2007 U.S. Dist. LEXIS 89648 at *17 n.7; *Dukes v. S.H.U. C.O. John Doe #1*, 03 Civ. 4639 (CLB)(MDF), 2006 U.S. Dist. LEXIS 41517, at *21 (S.D.N.Y. June 12, 2006) (ordering evidentiary hearing on question of exhaustion); *Priester v. Rich*, 457 F. Supp. 2d 1369, 1277 (S.D. Ga. 2006), *aff'd sub nom. Bryant v. Rich*, 530 F.3d 1368 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008). However, because I find that there is no genuine issue of material fact on the exhaustion question, I need not weigh in on the debate as to whether the Court or the jury is in the proper position to decide those issues.

No. 01 Civ. 2648 (BSJ), 2004 U.S. Dist. LEXIS 3698, at *7 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); *see also* Bellamy Decl. ¶ 7 ("[I]f an inmate does not receive a response to a grievance alleging employee harassment in a timely fashion, he may appeal his grievance to CORC by filing a notice of decision to appeal with the Inmate Grievance Program clerk at his facility.") (citing 7 N.Y.C.R.R. § 701.8(g)).  Thus, because there is no dispute that Harrison did not appeal any of his grievances to which his claims in the instant lawsuit relate to the CORC, as required by the DOCS grievance procedure, and because Harrison has not sufficiently shown that any of the exceptions under *Hemphill* excuses his failure to exhaust, summary judgment in favor of the Defendants is appropriate on all of Harrison's claims.  As such, the Court need not address Defendants' myriad other arguments in support of their motion for summary judgment.

Typically, the dismissal of a claim for failure to exhaust administrative remedies is without prejudice, because a "prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)).  However, "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust," dismissal with prejudice is warranted.  *Id.* at 88.  Here, Defendants have not argued that dismissal should be with prejudice, nor have they shown that administrative remedies have become unavailable.  *See Donahue*, 2004 U.S. Dist. LEXIS 17189, at *27 & n.13.  Accordingly, although dismissal is appropriate due to Harrison's failure to exhaust his remedies, such dismissal will be without prejudice to Plaintiff's ability to re-file in accordance with the DOCS procedure, appealing those grievances to the CORC, and reinstating the instant suit.

Should Harrison choose to pursue his administrative remedies and file a new federal complaint, the court advises him to be mindful of the requirement that all defendants in a suit under 42 U.S.C. § 1983 must be shown to have been personally involved in the constitutional violations alleged.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  A supervisor may be shown to be personally involved if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the

> defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, (2d Cir. 1995) (citations omitted). The doctrine of *respondeat superior* does not apply to claims under §1983; that is, a defendant cannot be held liable merely because he occupied a supervisory position. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) ("[P]laintiff's claim for money damages against [the Commissioner] requires a showing of more than linkage in the prison chain of command."). "Further, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Brown v. Eagen*, 08-CV-0009 (TJM/DRH), 2009 U.S. Dist. LEXIS 24876, at *16-17 (N.D.N.Y. Mar. 26, 2009) (citations omitted). A complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987). Here, in particular, although it is unnecessary to explicitly decide at this time, the Court is skeptical as to whether valid claims exist as against Defendants Goord, Mazzuca, Larkin, Goode, Buonato, Hobbs, Larson, or Rama. Plaintiff should be aware that prison supervisors cannot be deemed personally involved based simply on a response to a complaint, and should Plaintiff draft a new complaint, he is advised to analyze the validity of naming each defendant before filing any such complaint. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). For instance, the receipt by certain defendants of letters complaining of alleged constitutional violations do not necessarily indicate that those defendants satisfy the personal involvement requirement, even if the letters are "ignored"; when the letters are forwarded to the appropriate party, supervisory personnel is entitled to rely on the established administrative complaint system to resolve the issue. *See, e.g.*, *id.* (holding DOCS Commissioner not liable for referring plaintiff's first letter of appeal to subordinate or for summarily responding to plaintiff's second letter requesting a status update on his appeal); *Westbrook v. City Univ. of N.Y.*, 591 F. Supp. 2d 207, 225 (E.D.N.Y. 2008) ("Even if [defendant] had not forwarded plaintiff's letters, . . . the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.") (citations omitted); *Ortiz-Rodriguez v. New York State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007); *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 452 (S.D.N.Y. 2007); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3,

2005); *Gayle v. Lucas*, 97 Civ. 0883 (MGC), 1998 U.S. Dist. LEXIS 3919, at *11-12 (S.D.N.Y. Mar. 30, 1998).

Since this argument is persuasive, I decline to examine the remaining concerns voiced by the Defendants.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's complaint is dismissed without prejudice. The Clerk of this Court is instructed to close all open motions in this matter and remove the matter from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**June 9, 2009**

_____
J.S.D.J.